KIMBERLY AROUH (SBN 163285)
kimberly.arouh@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA  92101
Telephone:   619 239 8700
Fax:              619 702 3898

Attorneys for Petitioner
General Conference Corporation of Seventh-day Adventists

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br><br>THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION<br><br>　　　　　　Respondent. | Case No.:<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER**<br><br>Date:　　　TBD<br>Time:　　　TBD<br>Dept.　　　TBD |

1

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 6

II. STATEMENT OF FACTS ................................................................................................. 8

III. THE STANDARD FOR A PROTECTIVE ORDER ......................................................... 10

IV. GCCSDA HAS STANDING TO SEEK A PROTECTIVE ORDER................................. 10

V. THE DISCOVERY SOUGHT BY DSDAA IS IRRELEVANT TO DSDAA'S CLAIMS IN THE TTAB PROCEEDING................................................................................................ 11

VI. THE DISCOVERY SOUGHT BY DSDAA WOULD VIOLATE THE FIRST AMENDMENT................................................................................................................. 15

VII. CONCLUSION.................................................................................................................. 19

2

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belya v. Kapral*,
   45 F.4th 621 (2d Cir. 2022) ...........................................................................................17

*Chrysler Corp. v. Fedders Corp.*,
   643 F.2d 1229 (6th Cir. 1981) .......................................................................................10

*Colorado Christian Univ. v. Weaver*,
   534 F.3d 1245 (10th Cir. 2008) .....................................................................................15

*Demkovich v. St. Andrew the Apostle Parish, Calumet City*,
   3 F.4th 968 (7th Cir. 2021) ......................................................................................17, 18

*Drips Holdings, LLC v. Teledrip LLC*,
   Case No. 5:19-CV-02789-JRA, 2021 WL 8342860 (N.D. Ohio. April 15, 2021) ..................10

*EEOC v. Catholic Univ. of Am.*,
   83 F.3d 455 (D.C. Cir. 1996) .........................................................................................16

*Employment Div., Department of Human Resources of Oregon v. Smith*,
   494 U.S. 872 (1990) ......................................................................................................18

*Frito-Lay North America Inc. v. Princeton Vanguard LLC*,
   100 USPQ2d 1904 (TTAB 2011) ..................................................................................12

*Garcia v. Jefferson Capital Systems. LLC*,
   2006 U.S. Dist. LEXIS 56147 (M.D. Fla. August 11, 2006) ........................................11

*Intercontinental Exchange Holdings, Inc. v. New York Mercantile Exchange, Inc.*,
   2021 USPQ2d 988 (TTAB 2021) ..................................................................................12

*Laborers Pension Trust Fund v. CRS Poured Concrete Walls*,
   2006 U.S. Dist. LEXIS 92781 (E.D. Mich. Dec. 22, 2006) ..........................................11

*Little v. Wuerl*,
   929 F.2d 944 (3d Cir. 1991) ..........................................................................................18

*Mattel, Inc. v. Walking Mountain Productions*,
   353 F.3d 792 (9th Cir. 2003) .........................................................................................13

*McCarthy v. Fuller*,
   714 F.3d 971 (7th Cir. 2013) .........................................................................................18

*McClure v. Salvation Army*,
   460 F.2d 553 (5th Cir. 1972) .........................................................................................17

*Minker v. Baltimore Ann. Conf. of United Methodist Church*,
  894 F.2d 1354 (D.C. Cir. 1990) ..................................................................................... 17

*Mitchell v. Helms*,
  530 U.S. 793 (2000) ....................................................................................................... 17

*Natal v. Christian & Missionary All.*,
  878 F.2d 1575 (1st Cir. 1989) ....................................................................................... 18

*New Kids on the Block v. News America Pub., Inc.*,
  971 F.2d 302 (9th Cir. 1992) ......................................................................................... 13

*NLRB v. Catholic Bishop of Chicago*,
  440 U.S. 490 (1979) ....................................................................................................... 16

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
  591 U.S. 732 (2020) ....................................................................................................... 15

*Person's Co. v. Christman*,
  900 F.2d 1565 (Fed. Cir. 1990) ..................................................................................... 11

*Petruska v. Gannon Univ.*,
  462 F.3d 294 (3d Cir. 2006) ........................................................................................... 17

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*,
  393 U.S. 440 (1969) ....................................................................................................... 15

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
  772 F.2d 1164 (4th Cir. 1985) ....................................................................................... 16

*In re REMEC, Inc. Securities Litigation*,
  No. 04cv1948 JLS, 2008 WL 2282647 (S.D. Cal. May 30, 2008) ........................... 10, 13

*Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*,
  511 F.3d 437 (4th Cir. 2007) ......................................................................................... 11

*Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*,
  426 U.S. 696 (1976) ............................................................................................. 15, 16, 18

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
  Nos. 13-CV-1946-LAB(WVG), 13- CV-1947-LAB(WVG), 2014 WL 12577592
  (S.D. Cal. Dec. 22, 2014) ............................................................................................... 13

*Skrzypczak v. Roman Catholic Diocese of Tulsa*,
  611 F.3d 1238 (10th Cir. 2010) ..................................................................................... 17

*Strategic Partners, Inc. v. FIGS, Inc.*,
  No. CV 19-2286-GW, 2020 WL 6143607 (C.D. Cal. Sep. 3, 2020) .............................. 10

4

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF
SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

*Struck v. Gao*,
    Case. No. 2:22-cv-02415-SPG-MAA, 2023 WL 4155373 (C.D. Cal. Mar. 15,
    2023) .......................................................................................................................... 10, 12, 13

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*,
    450 U.S. 707 (1981) ................................................................................................................. 17

*Tomic v. Catholic Diocese of Peoria*,
    442 F.3d 1036 (7th Cir. 2006) ................................................................................................. 18

*Watson v. Jones*,
    80 U.S. 679 (1872) ................................................................................................................... 15

**Statutes**

15 U.S.C. §§ 1067, 1068 ................................................................................................................ 11

15 U.S.C. § 1070 ............................................................................................................................ 11

**Rules**

Fed. R. Civ. P. 26(b) ..................................................................................................................... 11

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 11, 12, 13

Fed. R. Civ. P. 26(c) ................................................................................................................. 6, 10

Fed. R. Civ. P. 34 .......................................................................................................................... 11

Fed. R. Civ. P. 37 .......................................................................................................................... 16

Fed. R. Civ. P. 45 .......................................................................................................................... 11

Fed. R. Civ. P. 45(d)(1) ................................................................................................................. 14

## I.  INTRODUCTION

Petitioner General Conference Corporation of Seventh-day Adventists ("GCCSDA") hereby submits this Motion for a Protective Order pursuant to Fed. R. Civ. P. 26(c) preventing The Davidian Seventh-Day Adventist Association ("DSDAA") from taking the third party deposition of Secrets Unsealed, or in the alternative, limiting the scope and time of any such deposition.

GCCSDA and DSDAA are parties to an administrative proceeding before the Trademark Trial and Appeal Board ("TTAB") in which the parties are seeking cancellation of each other's trademark registrations.[1] DSDAA has alleged that GCCSDA has abandoned its rights in the trademarks SEVENTH-DAY ADVENTIST and GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS[2] by allegedly licensing the marks to third parties without adequate quality control provisions and/or by failing to enforce its rights against unauthorized use of the marks.

In connection with the TTAB proceeding, DSDAA has served a subpoena (the "Subpoena") on Secrets Unsealed, a supporting ministry not affiliated with or overseen by GCCSDA, seeking document production and deposition testimony.[3] Ex. 1 to Arouh Dec., Subpoena to Secrets Unsealed (hereinafter Ex. 1). However, DSDAA has not explained how the extremely broad list of topics on which it seeking deposition testimony from Secrets Unsealed is any way relevant to the TTAB proceeding. Secrets Unsealed is a legally independent entity that is not a member or denominational entity of the Seventh-day Adventist Church, and is not a licensee or authorized user of the SEVENTH-DAY ADVENTIST Marks at issue in the TTAB Proceeding.

///

---

[1] *General Conference Corporation of Seventh-day Adventists vs. Davidian Seventh-day Adventist Association*, Cancellation No. 92078546.  This proceeding will hereinafter be referred to as the "TTAB Proceeding."

[2] These marks will hereinafter be collectively referred to as the "SEVENTH-DAY ADVENTIST Marks."

[3] As discussed herein, Secrets Unsealed has already produced documents in response to the portion of the subpoena requesting production of documents, so GCCSDA is only moving for a protective order in connection with the portion of the subpoena seeking deposition testimony.

6

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

The Subpoena issued by DSDAA is extremely overbroad in that it seeks testimony regarding "all communications" and "all agreements" between DSDAA and GCCSDA, regardless of whether such communications and agreements have anything to do with the SEVENTH-DAY ADVENTIST Marks. These topics are almost completely irrelevant to DSDAA's claims in the TTAB Proceeding, in which the scope of allowable discovery is much narrower than in federal litigation. The only communications or agreements which might conceivably be relevant to DSDAA's claims in the TTAB Proceeding are those which relate to any use of the SEVENTH-DAY ADVENTIST Marks by Secrets Unsealed, or any license or authorization from GCCSDA for Secrets Unsealed to use the Marks. However, Secrets Unsealed has already produced nearly 1,000 pages of documents showing that it has not had any communications with GCCSDA regarding the use of the SEVENTH-DAY ADVENTIST Marks and that there are no agreements authorizing it to use the Marks. Accordingly, requiring Secrets Unsealed to submit to a deposition would be a waste of the valuable time of both Secrets Unsealed and GCCSDA.

In addition, forcing Secrets Unsealed to submit to a deposition on DSDAA's intended topics would violate the First Amendment. The deposition would necessarily require Secrets Unsealed to divulge its religious beliefs, doctrines, and core principles, and to what extent GCCSDA has a right to "oversee" Secrets Unsealed's beliefs. Indeed, DSDAA's counsel has already stated that this is exactly what he is trying to do in his correspondence with Secrets Unsealed's counsel. This inquiry would significantly impair both Secrets Unsealed's and GCCSDA's free exercise of religion and entangle the government in theological issues in violation of the First Amendment's Religion Clauses.

For the above reasons, the Court should issue a protective order barring DSDAA from taking the deposition of Secrets Unsealed, or in the alternative, significantly limiting the scope of any such deposition to those facts directly relevant to the TTAB Proceeding and prohibiting DSDAA from asking any questions regarding Secrets

Unsealed's religious or theological beliefs or principles.

## II. STATEMENT OF FACTS

The Seventh-day Adventist Church (the "Church") is an organized Protestant Christian church with over twenty million members worldwide, including over 1.2 million members in the United States. Ex. 2, Baham Declaration, ¶3. The governing body of the Church is the General Conference of Seventh-day Adventists (the "General Conference").[4] *Id*. at ¶4. GCCSDA is a corporation established to hold title to the earthly assets of the Church, including trademarks and other intellectual property. *Id*. at ¶2.

GCCSDA is the owner of U.S. Trademark Registration No. 1,177,185 for the mark SEVENTH-DAY ADVENTIST which is based on use of that mark in commerce dating back to 1860, as well as U.S. Reg. No. 1,171,760 for the mark GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS. *Id*. at ¶5. GCCSDA licenses the SEVENTH-DAY ADVENTIST Marks and its other trademarks to Church entities that have denominational status and are listed in the current *Seventh-day Adventist Yearbook* as well as local churches in accordance with Section BA 40 40 of the General Conference Working Policy. *Id*. at ¶6.

In 2021, the U.S. Patent and Trademark Office issued a trademark registration to DSDAA for the mark THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION (U.S. Reg. No. 6,540,553). GCCSDA subsequently filed a Petition for Cancellation with the Trademark Trial and Appeal Board, seeking cancellation of DSDAA's registration based upon GCCSDA's prior rights in its SEVENTH-DAY ADVENTIST Marks. DSDAA has filed a counterclaim for cancellation of GCCSDA's trademark registrations for the SEVENTH-DAY ADVENTIST Marks, based in part upon GCCSDA's alleged failure to monitor and control the use of the marks by

---

[4] Although GCCSDA and the General Conference are separate entities, the parties have been using "GCCSDA" to refer jointly to GCCSDA and the General Conference for purposes of the TTAB Proceeding, so GCCSDA will continue to do so for purposes of this Motion.

denominational entities of the Church, which DSDAA alleges constitutes abandonment of the SEVENTH-DAY ADVENTIST Marks.

As noted above, GCCSDA provides an automatic license of the SEVENTH-DAY ADVENTIST Marks to denominational entities, i.e. Church entities that have denominational status and are listed in the current *Seventh-day Adventist Yearbook* as well as local churches that are members of a local conference or union which is part of the General Conference. Ex. 2, Baham Declaration, ¶6. However, Secrets Unsealed is not a denominational entity, but rather a supporting ministry, i.e. a group that supports the spiritual mission of the Seventh-day Adventist Church but is not controlled by or legally affiliated with the Church. *Id*. at ¶7. As such, Secrets Unsealed is not licensed to use the SEVENTH-DAY ADVENTIST Marks. *Id. at* ¶8-9.

DSDAA served the Subpoena on Secrets Unsealed on or around June 13, 2024 seeking both the production of documents and deposition testimony. Ex. 1. On June 28, 2024, Secrets Unsealed's outside counsel sent a letter to DSDAA's counsel objecting to the scope of the Subpoena. DSDAA's counsel responded to these objections via a June 28, 2024 letter in which DSDAA's counsel disagreed with the objections of Secrets Unsealed's counsel, but agreed to limit the definition of the "SDA Church" in the Subpoena to the General Conference, the North American Division, and the unions and local conference within the NAD, and to limit the scope of certain document requests and the deposition topics to the last five years. Ex. 2 to Arouh Dec., Letter from Theodore Chiacchio to Patrick Gorman and Tracy Agrall dated June 28, 2024 (hereinafter referred to as to the "Chiacchio Letter").

Secrets Unsealed subsequently produced approximately 990 pages of documents in response to DSDAA's document requests, and the parties scheduled a deposition for January 21, 2025. GCCSDA gave notice to DSDAA and Secrets Unsealed on January 17, 2025 that it intended to move for a protective order, and Secrets Unsealed agreed that the deposition should be postponed pending the outcome of this motion. The parties met and conferred on the protective order but could not reach agreement.

### III. THE STANDARD FOR A PROTECTIVE ORDER

When discovery falls outside of the scope of discovery allowed by Rule 26, or is used as a tool to annoy, embarrass, oppress, or burden a party from whom discovery is sought, a court may enter a protective order pursuant to Fed. R. Civ. P. 26(c) to forbid the discovery or limit its scope. "In other words, a court may issue a protective order that may excuse the third party from appearing to testify or producing documents (which has the same effect as quashing the subpoena), or it may impose conditions on when the appearance takes place, what may be asked, or who may read the document produced in the subpoena." *Drips Holdings, LLC v. Teledrip LLC*, Case No. 5:19-CV-02789-JRA, 2021 WL 8342860, at *3 (N.D. Ohio. April 15, 2021). The court also has the discretion to withdraw a third-party subpoena entirely. *Id.*

The ability to limit discovery is within the sound discretion of the district court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The court has the ability to, among other remedies, bar the discovery altogether, specify the terms of the discovery, or limit the scope of the discovery. *Struck v. Gao*, Case. No. 2:22-cv-02415-SPG-MAA, 2023 WL 4155373, at *7 (C.D. Cal. Mar. 15, 2023).

### IV. GCCSDA HAS STANDING TO SEEK A PROTECTIVE ORDER

GCCSDA has standing to seek a protective order in connection with the discovery sought from Secrets Unsealed. Courts in this circuit recognize that a party can move for a protective order under Rule 26(c) to challenge a third party subpoena if the subpoena is overly broad and/or seeks irrelevant information. *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW, 2020 WL 6143607, at *2 (C.D. Cal. Sep. 3, 2020); *see also In re REMEC, Inc. Securities Litigation*, No. 04cv1948 JLS, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("A party…has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information."). In addition, GCCSDA has a personal interest in preventing the deposition as DSDAA seeks confidential information implicating the relationship between GCCSDA and Secrets Unsealed; as DSDAA's counsel stated in his letter,

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF
SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

DSDAA is intending to seek testimony regarding whether and to what extent GCCSDA "oversee[s]…the biblical moral, doctrinal, social philosophies and teachings, and practices that Secrets Unsealed may endorse or condone, and those that Secrets Unsealed may not." Ex. 2, Chiacchio Letter.

## V.   THE DISCOVERY SOUGHT BY DSDAA IS IRRELEVANT TO DSDAA'S CLAIMS IN THE TTAB PROCEEDING

The Court should issue a protective order preventing DSDAA from obtaining any documents or deposition testimony from Secrets Unsealed because the discovery sought by DSDAA is simply not relevant to the TTAB Proceeding between DSDAA and GCCSDA. A third-party subpoena under Rule 45 must meet the same standard of relevance as any other discovery request. *See Laborers Pension Trust Fund v. CRS Poured Concrete Walls*, 2006 U.S. Dist. LEXIS 92781 (E.D. Mich. Dec. 22, 2006) ("[T]he reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)"); *Garcia v. Jefferson Capital Systems. LLC*, 2006 U.S. Dist. LEXIS 56147 (M.D. Fla. August 11, 2006) ("Although Fed. R. Civ. P. 45 does not include relevance as an enumerated reason for quashing a subpoena, the scope of discovery under Rule 45 is the same as the scope of discovery under Fed. R. Civ. P. 26(b) and 34").

Furthermore, the scope of discovery permitted in a TTAB proceeding is narrower than the scope of discovery typically allowed in federal court litigation. "As an administrative tribunal of limited jurisdiction, the TTAB is empowered only to decide whether a given trademark is registrable." *Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437, 443 (4th Cir. 2007) (*citing* 15 U.S.C. §§ 1067, 1068; 15 U.S.C. § 1070; *Person's Co. v. Christman,* 900 F.2d 1565, 1571 (Fed. Cir. 1990)). Therefore, the scope of discovery in a TTAB proceeding is limited to those issues directly relating to the registrability of a mark. The Trademark Board Manual of Procedure, which sets forth the governing rules in TTAB proceedings, states that "[t]he scope of discovery in Board proceedings is generally narrower than in court

proceedings, especially those involving infringement and/or where both parties have made extensive use of the marks."[5]  TBMP at § 402.01; *see also Intercontinental Exchange Holdings, Inc. v. New York Mercantile Exchange, Inc.,* 2021 USPQ2d 988, at *9-10 (TTAB 2021) ("In view of the Board's limited jurisdiction and the narrowness of issues decided in Board cases, discovery in Board cases is generally narrower than that in court proceedings."); *Frito-Lay North America Inc. v. Princeton Vanguard LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011) (referring to the "traditional, i.e. narrow, view of discovery in Board proceedings").

　　　　Therefore, to the extent that the deposition testimony sought by DSDAA has any relevance, such relevance is limited to topics that are relevant to DSDAA's claim in the TTAB proceeding that GCCSDA has abandoned its rights in the SEVENTH-DAY ADVENTIST Marks.  *See* Fed. R. Civ. P. 26(b)(1) (stating that a party may obtain discovery "that is relevant to any party's claim or defense," subject to certain limitations).  In contrast, the topics on which DSDAA is seeking discovery are grossly overbroad and are not limited in any way to matters related to DSDAA's claims in the TTAB proceeding.  For example, Deposition Topic No. 1 in the Subpoena is "communications between Secrets Unsealed and the SDA Church." Ex. 1. As written, this topic covers <u>all</u> communications, not merely those which relate to the SEVENTH-DAY ADVENTIST Marks at issue in the TTAB proceeding.  Likewise, Topic No. 2 (communications regarding "Secrets Unsealed's operations"), Topic No. 3 (communications regarding the "goods and/or services offered by Secrets Unsealed"), and Topic No. 5 (agreements between Secrets Unsealed and the SDA Church), are not in any way limited to communications or agreements relating to the SEVENTH-DAY ADVENTIST Marks.  Courts have consistently found that discovery requests seeking "all communications" between a party and a third party are presumptively overly broad

---

[5] This is precisely such a case - the GCCSDA's rights in the SEVENTH-DAY ADVENTIST Mark date back to 1861, and the DSDAA claims to have been using its mark since 1965.

and invalid. *Struck v. Gao*, Case. No. 2:22-cv-02415-SPG-MAA, 2023 WL 4155373, at *7 (C.D. Cal. Mar. 15, 2023), *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, Nos. 13-CV-1946-LAB(WVG), 13- CV-1947-LAB(WVG), 2014 WL 12577592, at *3–8 (S.D. Cal. Dec. 22, 2014).

DSDAA's extremely broad list of intended deposition topics clearly goes well beyond the scope of relevancy provided for in Rule 26(b)(1), let alone the narrower standard of discovery in TTAB proceedings. *See Struck*, 2023 WL 4155373, at *11 (C.D. Cal. Mar. 15, 2023) ("[T]he Court agrees with Defendants that Request C is overly broad in that it could yield communications or documents wholly unrelated to any of Plaintiffs' trade secret claims"); *REMEC*, 2008 WL 2282647, at **3-4 (finding various document requests to third party seeking "all agreements," "all communications, and "all reports or presentations" regarding Defendant "far exceed the scope of the claims and defenses asserted in this case"; protective order granted). Therefore, the Court should issue an order preventing DSDAA from deposing Secrets Unsealed regarding these overly broad topics. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-814 (9th Cir. 2003) (upholding district court's decision to quash third party subpoena where "no attempt had been made to try to tailor the information request to the immediate needs of the case").

To the extent that the deposition topics listed in the subpoena have any relevance to the TTAB Proceeding, such relevance would be limited to communications and agreements that directly relate to the use of the SEVENTH-DAY ADVENTIST Marks in commerce. However, Secrets Unsealed is not a licensee of the SEVENTH-DAY ADVENTIST Mark and does not use the SEVENTH-DAY ADVENTIST Marks in commerce.[6] Secrets Unsealed has already produced nearly 1,000 pages of documents

---

[6] To the extent that Secrets Unsealed uses the "Seventh-day Adventist" name at all, it is purely a nominative use to refer to the religious services provided by GCCSDA and the official Seventh-day Church structure. *See New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) ("Such nominative use of a mark – where the only word reasonably available to describe a particular thing is pressed into service-lies outside the strictures of trademark law."). DSDAA's counsel was unable to point to any evidence of use by Secrets Unsealed in the parties'

to DSDAA in response to the Subpoena, and this document production does not contain any communications related to any use of the SEVENTH-DAY ADVENTIST Marks by Secrets Unsealed in commerce (Topic 1), any communications related to any "operations" regarding the use of the SEVENTH-DAY ADVENTIST Marks (Topic 2), any communications regarding any goods or services offered by Secrets Unsealed under the SEVENTH-DAY ADVENTIST Marks (Topic 3), any communications regarding any use of SEVENTH-DAY ADVENTIST as a trademark by Secrets Unsealed (Topic 4), any authorization for Secrets Unsealed to use the SEVENTH-DAYADVENTIST Marks (Topic 5), or any agreements between GCCSDA and Secrets Unsealed regarding the SEVENTH-DAY ADVENTIST Marks (Topic 6). The existence or lack thereof of a formal business relationship and/or affiliation between Secrets Unsealed and the SDA Church (Topic 7) is also irrelevant to DSDAA's claims in the TTAB Proceeding. The only formal business relationship that would be relevant would be if Secrets Unsealed were a licensee of the SEVENTH-DAY ADVENTIST Marks, but the documents already produced by Secrets Unsealed show that there is no such relationship.

Conducting a deposition to allow DSDAA to ask Secrets Unsealed about non-existent communications and agreements would be a waste of time of both Secrets Unsealed and GCCSDA. A party that serves a subpoena on a non-party must take "reasonable steps to avoid imposing undue burden" on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). Requiring Secrets Unsealed to submit to a deposition when it has already produced nearly 1,000 pages of documents showing that it does not have any information relevant to DSDAA's claims in the TTAB proceeding would impose a needless burden on Secrets Unsealed.

///

---

meet and confer conference that would be considered trademark use in commerce by Secrets Unsealed, i.e. use to identify the source of the goods or services provided by Secrets Unsealed. Arouh Dec. at paragraph 4.

In summary, the list of topics on which DSDAA is seeking to depose Secrets Unsealed is incredibly overly broad and not in any way tailored to DSDAA's claims in the TTAB Proceeding. Moreover, even to the limited extent that such topics may be relevant (i.e. if they relate to the use of the SEVENTH-DAY ADVENTIST Marks), Secrets Unsealed has already established through its document production that it does not have any information relevant to DSDAA's requests. Therefore, the Court should issue a protective order prohibiting DSDAA from taking the unnecessary and burdensome deposition of Secrets Unsealed.

## VI. THE DISCOVERY SOUGHT BY DSDAA WOULD VIOLATE THE FIRST AMENDMENT

In addition to being irrelevant to DSDAA's claims in the TTAB proceeding, the deposition testimony sought by DSDAA would also violate the First Amendment. DSDAA's counsel has expressly admitted that DSDAA is seeking testimony regarding "the biblical, moral, doctrinal, social philosophies and teachings that Secrets Unsealed may endorse or condone, and those that Secrets Unsealed may not" as well as "the core principles of Secrets Unsealed." Exhibit 2, Chiacchio Letter. Aside from the fact that these topics are outside of the scope of the already overly broad topics listed in the Subpoena, forcing Secrets Unsealed to testify regarding its biblical and doctrinal beliefs and positions would violate the First Amendment and impose an undue burden on Respondent and ultimately, on the General Conference, because DSDAA has already signaled that it wants to inquire into whether and to what extent the General Conference "oversees" Secrets Unsealed's philosophies and principles. *Id*.

The discovery sought by DSDAA would inevitably involve this Court and the TTAB in the religious affairs of both Secrets Unsealed and the General Conference, in violation of the First Amendment's Religion Clauses, which forbid government "entanglement in religious issues." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 761 (2020). The entanglement doctrine "protects religious institutions from governmental monitoring or second-guessing of their religious beliefs and

practices." *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1261 (10th Cir. 2008). This protection is part of religious groups' "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady*, 591 U.S. at 747.  The Supreme Court has repeatedly warned that in cases involving religious entities, "courts must take care to avoid resolving underlying controversies over religious doctrine" and "practice."  *Our Lady*, 591 U.S. at 751 n.10 (quoting *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449 (1969), and citing *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696, 715 n.8 (1976), in turn quoting *Watson v. Jones*, 80 U.S. 679, 729 (1872)).

DSDAA's intrusion on Secrets Unsealed's (and indirectly, the General Conference's) First Amendment rights involves both procedural and substantive entanglement, neither of which is permissible. First, allowing DSDAA to take the deposition of Secrets Unsealed would procedurally entangle this Court in Secrets Unsealed's religious beliefs.  The First Amendment forbids "extensive inquiry by civil courts into religious law and polity." *Milivojevich*, 426 U.S. at 709.  As the Supreme Court has said, "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979).

DSDAA is seeking to compel Secrets Unsealed, a religious ministry, to divulge its "biblical, moral, doctrinal, social philosophies and teachings that Secrets Unsealed may endorse or condone, and those that Secrets Unsealed may not" as well as its "core principles."  Ex. 2, Chiacchio Letter.  The First Amendment forbids these types of entanglements in which "[c]hurch personnel and records would inevitably become subject to subpoena, discovery, cross-examination, the full panoply of legal process designed to probe the mind of the church." *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). "The remedies that a district court

16

may impose" for discovery issues "may be far-reaching in their impact upon religious organizations." *Id.*; *see* Fed. R. Civ. P. 37. All this gives rise to a "danger that churches . . . might make [decisions] with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments." *Rayburn*, 772 F.2d at 1171.

Indeed, many courts have agreed that similar types of "intrusive investigation[s]" constitute "excessive entanglement." *See EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 466 (D.C. Cir. 1996); *see id.* at 467 ("Having once been deposed, interrogated, and hauled into court, members of the [religious body] would do so with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments." (cleaned up)); *Minker v. Baltimore Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1357–60 (D.C. Cir. 1990) (warning of "impermissible avenues of discovery or remedies" that may arise from "[m]erely maintaining" a suit); *McClure v. Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972) (explaining that "an investigation and review of such matters of church administration and government" "could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment"); *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1245 (10th Cir. 2010) (likewise emphasizing discovery's "coercive effect"); *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 982 (7th Cir. 2021) (similarly noting "the prejudicial effects of incremental litigation" on religious bodies); *Petruska v. Gannon Univ.*, 462 F.3d 294, 305, 312 (3d Cir. 2006) (even "limited inquiry" into religious matters is constitutionally problematic, and courts may not "wad[e] into doctrinal waters"); *Belya v. Kapral*, 45 F.4th 621, 631 (2d Cir. 2022) (noting religious autonomy may "require limiting . . . the extent of discovery").

Second, and apart from this inescapable procedural entanglement, DSDAA's demand for testimony about Secrets Unsealed's religious beliefs is in service of an equally unacceptable substantive pursuit—for the TTAB, an administrative agency

17

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER

limited to deciding questions regarding trademark registration, to determine whether the General Conference has "the ability to oversee…the biblical moral, doctrinal, social philosophies and teachings, and practices that Secrets Unsealed may endorse or condone, and those that Secrets Unsealed may not." Ex. 2, Chiacchio Letter.  It is hard to "imagine an area of inquiry less suited to a [government body] for decision." *Minker*, 894 F.2d at 1357.  "It is well established" that courts and other governmental decision-makers (like the TTAB) "should refrain from trolling through a person's or institution's religious beliefs." *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality op.).  "[T]he judicial process is singularly ill equipped to resolve" supposed "[i]ntrafaith differences." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715 (1981).  Even apart from a religious ministry's free exercise interests, a government body has an independent duty "not [to] allow itself to get dragged into a religious controversy." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006).

  The TTAB's own rules state that the TTAB "is empowered to determine only the right to register [a trademark]," and that it is not authorized to decide broader questions such as infringement or unfair competition.  Trademark Board Manual of Procedure ("TBMP"), §102.01.  However, allowing DSDAA to inquire into GCCSDA's "oversight" of Secrets Unsealed's religious and theological beliefs and principles would require the TTAB "to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion." *Id.*  "Plainly, the First Amendment forbids civil courts from playing such a role." *Id.*  "[E]xtensive inquiry by civil courts into religious" doctrine is unconstitutional. *Milivojevich*, 426 U.S. at 709; *see, e.g.*, *Little v. Wuerl*, 929 F.2d 944, 948 (3d Cir. 1991) (explaining that it would be unconstitutional for a civil authority "to determine what constitutes 'the official teachings, doctrine or laws of the Roman Catholic Church' and whether [a party] has 'rejected' them").  Government bodies "must not presume to determine the place of a particular belief in a religion or

18

the plausibility of a religious claim." *Employment Div., Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 887 (1990). Such "'rules, policies, and decisions which are unmistakably of ecclesiastical cognizance' are 'not the federal [government's] concern.'" *Demkovich*, 3 F.4th at 983 (quoting *Natal v. Christian & Missionary All.*, 878 F.2d 1575, 1577 (1st Cir. 1989)); *see also McCarthy v. Fuller*, 714 F.3d 971, 976 (7th Cir. 2013) ("[T]he First Amendment . . . forbids the government to make religious judgments.").

Therefore, as the deposition testimony sought by DSDAA would inevitably procedurally and substantively entangle both this Court and the TTAB in the religious affairs of Secrets Unsealed and GCCSDA, the Court should issue a protective order preventing DSDAA from taking the deposition of Secrets Unsealed.

## VII. CONCLUSION

For the reasons set forth above, GCCSDA respectfully requests that the Court enter a protective order prohibiting DSDAA from taking the deposition of Secrets Unsealed or, in the alternative, limiting the scope of any such deposition to topics directly relevant to the use in commerce of the SEVENTH-DAY ADVENTIST Marks, placing a strict time limit on the deposition of not more than two hours, and prohibiting DSDAA from asking any questions regarding Secrets Unsealed's religious or theological beliefs or principles.

DATED: January 27, 2025                    BUCHANAN INGERSOLL & ROONEY LLP

By: /s/ Kimberly Arouh
Kimberly Arouh
Attorneys for Petitioner General Conference
Corporation of Seventh-day Adventists

19

MEMORANDUM OF POINTS & AUTHORITIES ISO GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS' MOTION FOR A PROTECTIVE ORDER